**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF CALIFORNIA
DEPARTMENT OF TOXIC SUBSTANCES
CONTROL, a State Agency,
        *Plaintiff-Appellee,*

    v.

HEARTHSIDE RESIDENTIAL
CORPORATION, a Delaware
Corporation,
        *Defendant-Appellant.*

No. 09-55389

D.C. No.
8:06-cv-00987-VBF-
MLG

OPINION

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted
June 9, 2010—Pasadena, California

Filed July 22, 2010

Before: Dorothy W. Nelson and Ronald M. Gould,
Circuit Judges, and James S. Gwin, District Judge.*

Opinion by Judge Gould

---

*The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

10551

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Donald A. Robinson (argued), Supervising Deputy Attorney General, Los Angeles, California, for the plaintiff-appellee.

Marc C. Forsythe, Goe & Forsythe, LLP, Irvine, California, for the defendant-appellant.

**OPINION**

GOULD, Circuit Judge:

This appeal presents a question of first impression whether "owner and operator" status under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a)(1), is determined at the time that cleanup costs are incurred or instead at the time that a recovery lawsuit seeking reimbursement is filed. We hold that the owner of the property at the time cleanup costs are incurred is the current owner for purposes of determining CERCLA liability.

**I**

In 1999, Hearthside Residential Corporation ("Hearthside") bought an undeveloped tract of wetlands known as the Fieldstone Property in Huntington Beach, California. The Fieldstone Property was adjacent to several residential parcels ("Residential Site") that Hearthside never owned or occupied. When Hearthside purchased the Fieldstone Property, it knew that the property was contaminated with polychlorinated biphenyls, or PCBs, a man-made substance considered toxic to humans and animals.

In 2002, Hearthside entered into a consent order with the State of California Department of Toxic Substance Control ("Department") by which Hearthside agreed to remediate the PCB contamination on the Fieldstone Property. The Department determined that the adjacent Residential Site was also contaminated with PCBs, which the Department alleged had leaked onto the Residential Site from the Fieldstone Property. The Department considered Hearthside responsible for investigating and remediating the Residential Site in addition to the Fieldstone Property, but Hearthside disagreed that it bore responsibility for the Residential Site and limited its cleanup to the Fieldstone Property. The Department certified that the

Fieldstone Property cleanup was complete on December 1, 2005, and within the same month Hearthside sold the Fieldstone Property to the California State Lands Commission.

Following Hearthside's disclaimer of responsibility for the PCBs on the Residential Site, the Department itself contracted to clean those parcels and incurred cleanup expenses between July 2002 and October 2003. In October 2006, the Department filed a complaint against Hearthside seeking, in relevant part, reimbursement for the Residential Site cleanup on the basis of (1) the Department's allegation that the Fieldstone Property was the source of the Residential Site contamination, and (2) Hearthside's ownership of the Fieldstone Property at the time the Residential Site was cleaned. Under the Department's view, Hearthside was the "owner" of the contamination source at the time of the cleanup, and thus was responsible for the remediation costs under CERCLA. *See* 42 U.S.C. § 9607(a). Hearthside disputed liability, arguing that "owner" status was determined at the time the recovery suit was filed—not at the time cleanup costs were incurred—and that Hearthside was not responsible for the Residential Site cleanup costs because it sold the Fieldstone Property before the Department filed suit.

The district court granted partial summary judgment in favor of the Department on the limited issue of whether Hearthside was an "owner and operator" of the Fieldstone Property.[1] After finding a "dearth of meaningful or controlling case law," the district court concluded that the purposes of CERCLA support a holding that "owner" status is determined at the time a response-recovery claim accrues, not at the time the lawsuit is initiated. The district court also granted the parties' joint request that the question be certified for immediate appeal, and we exercised our discretion to permit the appeal.

---

[1]The district court originally ruled for Hearthside on the ownership issue, but changed course after a renewed motion for summary judgment by the Department that focused more expansively on this issue.

*See* 28 U.S.C. § 1292(b). We review pure questions of law decided on summary judgment de novo. *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1205 (9th Cir. 2003).

## II

**[1]** CERCLA imposes "strict liability for environmental contamination" upon four classes of potentially responsible parties. *Burlington N. & Santa Fe Ry. Co. v. United States*, 129 S. Ct. 1870, 1878 (2009). CERCLA liability is joint and several, meaning that a responsible party may be held liable for the entire cost of cleanup even where other parties contributed to the contamination. *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 945 (9th Cir. 2002). The party saddled with the cleanup costs may, in turn, sue other potentially responsible parties for contribution. *Id.*

**[2]** At issue here is one type of potentially responsible party: "the owner and operator of a vessel or a facility." 42 U.S.C. § 9607(a)(1). We interpret this category to refer to "current" owners or operators. *See Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 881 (9th Cir. 2001) (en banc); *accord, e.g., United States v. Capital Tax Corp.*, 545 F.3d 525, 530 (7th Cir. 2008); *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 456 (6th Cir. 2007). CERCLA's definition of "owner," however, does not specify the proper date from which to measure ownership. *See* 42 U.S.C. § 9601(20). In this regard, the statute is silent. It is the measurement date that is at issue in this appeal.

## A

There is no controlling or persuasive precedent that answers the precise question before us. Both parties direct us to cases containing a rule statement phrased in their favor. The cases marshaled by the Department state that ownership is measured from the cleanup date, but a review of those decisions reveals that the statements were made in passing, where

the critical date was not in dispute. *See, e.g.*, *AM Int'l, Inc. v. Int'l Forging Equip. Corp.*, 982 F.2d 989, 997 (6th Cir. 1993) (stating in passing that property ownership is measured "at the time of its cleanup" in a case where the ownership date was not at issue); *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 840-41, 845 (4th Cir. 1992) (stating that the current owner is the one who "undertakes the task of cleaning up the environmental hazard," though the ownership date was not at issue because the same owner both cleaned up the property and filed the reimbursement suit).[2] We regard these statements as dicta rather than as "an intended choice of a rule," and therefore decline to accord them persuasive weight. *See Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1082 (9th Cir. 2006).

The same can be said of the Eleventh Circuit's opinion in *United States v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir. 1990), which Hearthside heavily relies upon in support of its view that ownership is measured from the date a recovery action is filed. In *Fleet Factors*, the owner at the time the United States filed its recovery lawsuit was exempt from liability under CERCLA because it was a county government that had involuntarily acquired the title to the contaminated property. *Id.* at 1555 (citing 42 U.S.C. § 9601(20)(A)(iii)). While the Eleventh Circuit did state that it "construe[s] the present owner and operator of a facility as that individual or entity owning or operating the facility at the time the plaintiff initiated the lawsuit by filing a complaint," *id.* at 1554, the thrust of the court's analysis was its interpretation of the phrase "immediately beforehand" in CERCLA's ownership definition, as that provision fixes liability when the current

---

[2]The district court noted that the only case containing some analysis of the ownership-measurement issue is *Elementis Chemicals, Inc. v. T H Agriculture & Nutrition, L.L.C.*, 373 F. Supp. 2d 257 (S.D.N.Y. 2005). The *Elementis* court, unlike the other cases cited by the parties, did identify and analyze the issue here presented. Nonetheless, as with the other cases, that discussion was not necessary or germane to the holding because the issue of ownership was not disputed. *See id.* at 267-69.

owner is a state or local government immune from cleanup liability, *id.* at 1555. Thus, because the county government could not be held liable, the Eleventh Circuit had no occasion to decide the question now before us: Which of two potentially responsible parties—one that owned the property when the recovery claim accrued and the other that owned it when suit was filed—is the "current owner" under CERCLA? Instead, the Eleventh Circuit's statement of law was made casually, without analysis, and as "a prelude to another legal issue that command[ed] the panel's full attention," and we do not find the statement persuasive.[3] *See United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring). As with the other cases cited by the parties that contain a bare rule statement and no supporting analysis, we do not believe *Fleet Factors* squarely considered this issue and we decline to adopt its language. *See id.*

## B

**[3]** In determining in the first instance when current-ownership status is measured under CERCLA, we observe that the definition of "owner and operator" is silent on the date from which ownership is measured. *See* 42 U.S.C.

---

[3]We also disagree with Hearthside's argument that Congress necessarily "approved" of the ownership-measurement language in *Fleet Factors* when it amended CERCLA in response to the *Fleet Factors* holding regarding the liability of property managers. *See Monarch Tile, Inc. v. City of Florence*, 212 F.3d 1219, 1221 n.2 (11th Cir. 2000) (discussing the reason for the CERCLA amendment). We have been directed to no part of the legislative history of the 1996 amendments indicating congressional approval of *Fleet Factors*'s "lawsuit filing" language, and our independent review reveals none. *See* CERCLA Lender and Fiduciary Liability Limitations Amendments, Pub. L. 104-208 § 2502(a)-(b), 110 Stat. 3009-462 to -467 (amending 42 U.S.C. §§ 9601, 9607 with the limited scope of providing protections to certain fiduciaries and managers). Therefore, "those who use legislative history to help discern congressional intent will see the history here as silent, hence a neutral factor, that simply confirms the obvious, namely, that Congress did not consider the issue." *See Small v. United States*, 544 U.S. 385, 393 (2005).

§ 9601(20). Because the plain text of the statute does not admit of a clear answer to this dispute, we look to the statutory context and CERCLA's purposes to determine how Congress intended ownership to be measured.[4] *See, e.g.*, *Carson Harbor Vill.*, 270 F.3d at 880 (describing CERCLA as a complex regulatory regime that requires us to "examine the statute as a whole, including its purpose and various provisions").

**[4]** Considering first the broader context of CERCLA liability, we conclude that the Department's view that ownership is measured at the time of cleanup best aligns with CERCLA's statute of limitations. The parties agree, as they must, that the applicable statute of limitations for a cost-recovery action is triggered (1) at the completion of a "removal" action, or (2) at the initiation of an on-site "remedial" action.[5] 42 U.S.C. § 9613(g)(2). Because statutes of limitations are intended in part to protect defendants, it is reasonable to assume that Congress meant the statute of limitations to run against (and protect) the owner of the property at the time cleanup occurs. *See, e.g.*, *United States v. Hagege*, 437 F.3d 943, 955 (9th Cir. 2006) (statutes of limitations ensure "that the defendant is given the protections of predictability and promptness"). If Hearthside's argument were adopted as law, then an owner could sell a recently cleaned piece of property to an innocent owner one day before the statute of limitations runs, with the result that the new owner would bear full cleanup liability under CERCLA if a recovery action was later timely filed. Such an unwise and untoward result would

---

[4]As we have previously observed, the direct evidence of CERCLA's legislative history includes "few truly relevant documents," perhaps because of the last-minute compromise that resulted in a "hastily assembled" final bill. *Carson Harbor Vill.*, 270 F.3d at 885 & nn.13-14. Thus, we will look to the statutory scheme and the purposes animating CERCLA to determine congressional intent.

[5]Although these events trigger the statute of limitations, a remediator need not wait until removal is complete or remediation is initiated to file suit. A CERCLA recovery action accrues "at any time after [recovery] costs have been incurred." 42 U.S.C. § 9613(g)(2).

undermine the general aim of statutes of limitations to provide notice and predictability to a defendant and to ensure that the defendant is in possession of the evidence needed to defend against the claim. *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) ("Statutes of limitations are intended to provide notice to defendants of a claim before the underlying evidence becomes stale."). We conclude that Congress's decision to activate the statute of limitations at the time of cleanup is strong contextual evidence that Congress intended the owner at the time of cleanup to be the "current owner" in a subsequent recovery suit.

**[5]** An analysis of CERCLA's purposes yields the same conclusion—that current ownership is measured at the time of cleanup. First, CERCLA encourages responsible parties to remediate hazardous facilities without delay. *Burlington N. & Santa Fe Ry. Co.*, 129 S. Ct. at 1874; *Fireman's Fund Ins. Co.*, 302 F.3d at 947 ("A fundamental purpose and objective of CERCLA is to encourage the timely cleanup of hazardous waste sites."). This policy weighs in favor of the Department's position because a landowner that knows it will ultimately be responsible for the cleanup costs has no incentive to delay the completion of that process once it has begun. Conversely, under the view of liability urged by Hearthside, a landowner seeking to avoid liability by transferring the property before a lawsuit is filed has every incentive to delay completing the cleanup process until it has found a buyer; the recovery suit is likely to be filed once cleanup is complete and the total cost is known. *See generally* Anthony R. Chase & John Mixon, *CERCLA: Convey to a Pauper and Avoid Cost Recovery Under Section 107(A)(1)?*, 33 Envtl. L. 293, 301-06 (2003) (hypothesizing a scenario in which "an owner may avoid cost-recovery liability by conveying the site to a willing pauper after learning about contamination, but before becoming specifically and personally obligated for cost recovery"). Any contrived delay that an owner might employ to find a buyer before the recovery lawsuit is filed would contravene CERCLA's purpose of efficient cleanup, and this consider-

ation favors the Department's view that ownership is determined when cleanup costs are incurred and not when the recovery suit is filed.

**[6]** Another important purpose of CERLCA is to encourage early settlement between potentially responsible parties and environmental regulators. *See, e.g.*, *Carson Harbor Vill.*, 270 F.3d at 880, 884 (discussing CERLCA's policies of "encouraging early settlement" and promoting the "expeditious and efficient cleanup of hazardous waste sites"); *Fireman's Fund Ins. Co.*, 302 F.3d at 948 (approvingly discussing "early settlement" under CERCLA, which allows "energy and resources to be directed at site cleanup rather than protracted litigation"). The importance of settlement within the CERCLA scheme undercuts Hearthside's argument for two reasons. First, measuring ownership from the date that the recovery lawsuit is filed requires that a recovery lawsuit *be* filed. A rule that produces a lawsuit in every case is the opposite outcome that CERCLA seeks to promote. Second, one of the most critical elements of a CERCLA settlement is the agreed remedial action plan that the responsible party agrees to undertake. *See* Alfred R. Light, *CERCLA Law and Procedure* 211 (1991). Because the owner at the time of cleanup can help determine the scope of the cleanup and select from among the reasonably effective remedial alternatives, *id.*, it follows that the same owner should be responsible for the cost of the remediation program that it had the opportunity to influence. CERCLA seeks to include property owners in the technical consulting process, and this policy is best served by a rule that sets current ownership at the time cleanup occurs.

**[7]** Hearthside contends that the lawsuit-filing date would establish a simple and clear date from which to measure. Hearthside urges that measuring ownership from the time of cleanup would require factual determinations about when cleanup commenced, when cleanup was completed, and when enough response costs were incurred so as to give rise to a recovery cause of action. We agree that in some cases factual

determinations may be necessary to determine current owner-ship.[6] Nonetheless, we are not persuaded that the limited fact-finding required to determine when a recovery action accrued is burdensome enough to require a different outcome. As we previously noted, a CERCLA recovery action accrues at the point that recovery costs are incurred, and the statute of limitations runs from the time a removal action is completed or a remedial action is begun on the site. 42 U.S.C. § 9613(g)(2). Thus, factual questions surrounding the relevant cleanup dates are a routine and familiar component of CERCLA actions, and courts are well equipped to resolve such factual questions without great difficulty. Given that CERCLA's policies promoting settlement and efficient cleanup support the Department's position, we are not persuaded that the possible necessity of determining the accrual date is sufficient to tip the balance in favor of Hearthside's preferred construction. We hold that current ownership for purposes of liability under 42 U.S.C. § 9607(a)(1) is measured from the time the recovery action accrues. Because there is no dispute that Hearthside was the owner of the Fieldstone Property at all times relevant to the remediation of the Residential Site, Hearthside is a current owner under 42 U.S.C. § 9607(a)(1).

### III

For the foregoing reasons, we affirm district court's partial summary judgment grant and remand for further proceedings not inconsistent with this opinion.

---

[6]No factual determinations are needed to determine current ownership in this case. Hearthside owned the Fieldstone Property at the time the Department requested remediation of the Residential Site, as well as during the entire cleanup of the Residential Site by the Department. Therefore, there is no question that Hearthside was the current owner of the Fieldstone Property at the time the Residential Site was remediated. We express no view, of course, on the remaining questions about whether the Fieldstone Property actually leaked contaminants onto the Residential Site or whether other responsible parties, as defined by 42 U.S.C. § 9607(a), may be liable for cleanup costs.

**AFFIRMED AND REMANDED.**