*Agency of Natural Res. v. Parkway Cleaners*, No. 480-7-10 Wncv (Toor, J., Aug. 5, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

| | |
|---|---|
| STATE OF VERMONT<br>AGENCY OF NATURAL RESOURCES,<br>  Plaintiff<br><br>v.<br><br>PARKWAY CLEANERS, et al.,<br>  Defendants | Docket No. 480-7-10 Wncv |

RULING ON MOTION TO DISMISS, MOTION TO ALTER,
and CROSS-MOTIONS FOR SUMMARY JUDGMENT

In this case, the Vermont Agency of Natural Resources (ANR or the State) seeks the abatement and cleanup, including related damages and penalties, of hazardous waste related to a former dry cleaning business in the Town of Hartford. The Town is a party solely by virtue of Defendants Richard S. Daniels and Hazen Street Holdings, Inc.'s, third-party complaint for indemnity. The Town has filed a motion to dismiss that complaint for failure to state a claim. The Fournier defendants have filed a motion to alter, by which they seek reconsideration of the court's denial of their motion for default judgment against Mr. Gendron. Daniels has filed a motion for summary judgment seeking to establish that he cannot have liability as a current owner of the property and is not responsible for releasing any hazardous waste at the site. The State has filed a motion for summary judgment seeking to establish that Daniels has liability as the current owner of the site and the amount of past damages.

I. The Town's Motion to Dismiss the Third-Party Complaint

Briefly, the State alleges in its complaint the following. The contaminated site was owned by the Gendron defendants, who operated a dry cleaning business there, from 1977 to

1988. The Fournier defendants—who have settled with the State—bought the property from the Gendrons and operated a dry cleaning business there. At some point, the Fourniers ceased dry cleaning operations and became delinquent in property taxes. Daniels was the high bidder at the tax sale and took title with a quitclaim deed from the tax collector in 1995. He conveyed the property to Hazen Street Holdings, Inc. (HSH), in 2006. The State claims that the conveyance was an invalid attempt to avoid liability for the hazardous waste related to the dry cleaning operations.

After the State initiated this case, Daniels and HSH filed a third-party complaint against the Town for indemnity. They allege that at the time of the tax sale, the property was an unimproved, vacant lot, and Daniels had no reason to know that it was contaminated. They further allege that neither of them is responsible for ever having released any contaminants at the site. They claim that if they become liable to the State in this case, then they will be entitled to indemnification from the Town. A copy of the tax collector's deed by which Daniels acquired the property is attached to their complaint.

The Town argues that the mere issuance of the tax collector's deed by the Town tax collector to Daniels cannot establish any right to indemnification. In opposition to dismissal, Daniels and HSH concede that the Town itself never "took possession of" the property. They assert, however, that the tax collector's deed put the Town in the chain of title and that is an adequate basis for indemnification. The tax sale statute makes clear that the Town does *not* take title unless it buys the land at the sale. *See* 32 V.S.A. § 5259. It is also clear that the tax collector's deed conveys title "against the person for whose tax it was sold," not against the Town. Id. § 5261. Moreover, a purchaser at a tax sale "buys strictly under the rule of *caveat emptor*," and "there is no warranty on the part of the public body making the sale." Morse v.

2

King, 137 Vt. 49, 51 (1979).

The court is unable to discern any conceivable basis for indemnification. Under 10 V.S.A. § 6615(i), one person responsible for specific releases of hazardous waste or the contaminated site as a whole, id. § 6615(a)(1)–(4), has a statutory right to seek contribution or indemnity from any other responsible person. Yet there is no allegation in the third-party complaint that the Town is potentially responsible to the State for anything.

There also is no allegation in the complaint that points towards any basis for common law contractual or implied indemnification. No contractual provision is alleged. "While it is difficult to state a general rule that will cover all cases, implied indemnification is usually appropriate only when the indemnitee is vicariously or secondarily liable to a third person because of some legal relationship with that person or because of the indemnitee's failure to discover a dangerous condition caused by the act of the indemnitor, who is primarily responsible for the condition." White v. Queechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 29 (1999). In relation to the pollution on the site, there is no allegation of any vicarious or secondary relationship or that the Town has any primary responsibility for the pollution.

As a matter of law, the mere issuance of a tax collector's deed quitclaiming a property to the highest bidder at a tax sale is insufficient to support a claim for indemnity for hazardous waste on the property against the town whose tax collector issued the deed. The motion to dismiss is granted.

## II. The Fourniers' Motion to Alter

In March 2014, the State and the Fournier defendants filed a joint motion seeking approval of their settlement agreement. Settlement with the State immunizes a responsible party from claims for contribution from other responsible parties but has no effect on the settling

party's contribution claims against others. 10 V.S.A. § 6615(i). On April 9, 2014, the court approved the settlement agreement. On April 22, 2014, the Fourniers filed a motion for default on their contribution claim against Mr. Gendron. The court denied that motion, indicating that approval of the settlement agreement dismissed the Fourniers as parties in this case. The Fourniers then filed a "motion to alter," by which they seek reconsideration of the denial of their motion for default.

The Fourniers urge that they carefully retained their contribution claim against Mr. Gendron in the settlement agreement. That much is clear in the terms of the agreement. The Fourniers' intent to remain parties and pursue their contribution claim in this case is less clear. For example, the parties included in the title of the settlement approval motion a request for dismissal of the Fourniers. The text of the motion did not make clear that they sought dismissal of the claims against them and not dismissal as parties.

In any event, the confusion now is clarified. The Fourniers remain parties in this case for purposes of their contribution claim. Their motion to alter is granted, as is their April 22, 2014 motion for default.

### III. The Summary Judgment Motions

In Daniels' summary judgment motion, he argues that the State has no evidence to support its claim that he has liability as a current owner of the property because he conveyed the property to HSH in 2006. He further argues that the State has no evidence that he released any contaminants while he owned the site, 1995 to 2006, or that any public nuisance exists. In its summary judgment motion, the State argues that Daniels has current owner liability because "current" represents the time at which the State's action accrued rather than when the lawsuit was filed. Alternatively, the State argues that the conveyance to HSH was a fraudulent transfer

4

under 9 V.S.A. § 2288 and, separately, HSH is Daniels' "alter ego" and the court should pierce the corporate veil and treat him as the current owner for purposes of this case. As an alternative to current owner liability, the State argues that Daniels is liable as a former owner for a release that occurred when he removed a building that used to house the dry cleaning business.[1] The State also seeks judgment on the amount of its past damages, prejudgment interest, and its requested injunction.

In making these arguments, both parties adopt the interpretation, as far it goes, of 10 V.S.A. § 6615 that appears in State v. Howe Cleaners, Inc., No 27-1-04 Wncv, 2006 WL 6047594 (Vt. Super. Ct. Mar. 10, 2006), *aff'd on other grounds*, 2010 VT 70, 188 Vt. 303. The court does the same for purposes of these motions. Under Howe Cleaners, the current owner of a contaminated site has complete liability to the State regardless of how or when the contamination occurred unless a statutory defense is available. Despite alleging in his answer and third-party complaint that he had no reason to know that the site was contaminated when he bought it, Daniels does not claim, even in the alternative, any statutory defense. *See* 10 V.S.A. § 6615(e) (describing the diligent owner defense). His argument is that he is a former owner, responsible at most for his own releases at the site, and there were no such releases. The first question posed by the motions, then, is whether Daniels will be treated as a current owner.[2]

## A. The Undisputed Facts

In support of its motion, the State filed an extensive statement of undisputed facts with specific citations to the record and the affidavit of Patricia Coppolino, the ANR site manager responsible for the property since 2004. The State's statement generally conforms to the

---

[1] There is no such allegation in the complaint.

[2] The State asserts that if Daniels is determined to have current owner liability for the site, then it will not pursue its alternative public nuisance claim.

requirements of Rule 56(c). In response, Daniels asserts that the Coppolino affidavit—almost in its entirety—should be disregarded as self-serving and not based on personal knowledge. Daniels does not cite the specific evidence that he claims is inadmissible. That is not a proper way to dispute facts under Rule 56(c)(1)(A), which requires "specific citations to particular parts of the materials in the record." The affidavit is from an ANR employee who recites her credentials and responsibilities as site manager for the property at issue. The facts she sets forth are based upon either her direct involvement in the matter or the business records of ANR. There is nothing on the face of the affidavit to suggest that it lacks adequate foundation or is otherwise inadmissible. For purposes of the summary judgment motions, the court considers the State's facts to be undisputed. V.R.C.P. 56(e)(2).

The undisputed facts that are material to the issue of whether Daniels is a current or former owner are as follows. The Hartford site first was used as a dry cleaning facility in the late 1970s. Perchloroethylene, or PERC, is a hazardous material that was used in dry cleaning businesses at the time. PERC was dumped on the site or released from the dry cleaning equipment. The site and neighboring properties remain contaminated with high levels of PERC, presenting an immediate threat to human health and the environment.

Daniels acquired title to the site in 1995 following a tax sale. His winning bid was under $3,000. By then, the dry cleaning business had ceased but a building that housed the dry cleaning operation remained on the site. Otherwise, it was a vacant lot, which is how it remains. A few years after purchasing the property, Daniels tore down the building. He has made no other use of the property. In 2002, Daniels received a letter from an ANR employee indicating that the site was contaminated, or suspected of being contaminated, with PERC. By 2005, Daniels was meeting with Coppolino and others about it. He was asked to pay for certain

6

investigation work at the site and to arrange and pay for other work. On May 1, 2006, the State received the results of a soil gas sampling test that showed high levels of PERC.

At this time, the State mistakenly believed that the site was owned by RSD, one of Daniels' corporations, rather than Daniels himself. On June 5, 2006, the State sent a "first letter" to RSD formally indicating its liability under 10 V.S.A. § 6615 and requesting that it begin taking specific corrective action. The State quickly discovered that Daniels himself owned the property. It met with Daniels to show him the deed documenting that he owned the property and to make clear that the State was seeking to hold him personally responsible. Daniels expressed surprise that he owned the property. At some point, Daniels told the town manager that he was worried that his liability for the site might ruin him financially.

On October 6, 2006, Daniels conveyed the property to HSH, which he incorporated as a real estate holding company. Daniels is its president, director, and manager. HSH paid no consideration for the property and received no indemnification or other assurance against liability to the State under 10 V.S.A. § 6615. Daniels signed the Vermont Property Transfer Tax Return as the seller and as the agent for the buyer. HSH has no assets of any kind other than the property and no potential ability to clean up the site or satisfy any liability to the State. It has no business records other than the deed by which the site was conveyed to it and documents related to the environmental investigation and cleanup.[3] The State did not learn of HSH until late October 2006, when its name appeared in a work plan for the site produced by an environmental consultant. Both before and after the conveyance to HSH, Daniels has had possession and control over the site.

The State seeks past damages in this case of $283,458 and prejudgment interest of $209,627 (and counting). When the site was conveyed to HSH, it had a listed value of $23,100.

---

[3] The lack of other business records implies that it never issued any stock and has no shareholders.

7

Both Daniels and HSH are named defendants in this case. They are represented by the same attorney. HSH has not opposed Daniels' summary judgment motion which, if successful, would make HSH completely liable to the State for the pollution at the site.

## B.  Liability

The site itself obviously is not an "asset" that anyone would want or that the State is trying to reach to satisfy a liability. Ownership of the site is a tremendous liability due to the contamination and the current owner liability provision of 10 V.S.A. § 6615(a)(1). The State argues that Daniels is the "current owner" for purposes of section 6615 because he was the owner when the State's claim accrued, and alternatively that he is the current owner now because his transfer of the property to HSH was not legitimate. The parties debate the issue of when "current" ownership is measured.[4] Daniels maintains that he is a mere former owner.[5]

It is undisputed that Daniels owned the property at the time ANR sought  to investigate the site, and at the time ANR first sought cleanup of the site. Thus, if "current owner" is measured at those times, as the Ninth Circuit held in California Dep't of Toxic Substances Control v. Hearthside Residential Corp., 613 F.3d 910 (9th Cir. 2010), the State has established that Daniels meets the "current owner" test. Alternatively, if the State can show that the court should pierce the corporate veil because Daniels' later transfer of the property was not legitimate, he would be the "current owner" even if that  date is measured at the time litigation begins. The court concludes that it need not decide when "current" ownership is measured,

---

[4] The Waste Management Act does not use the expressions "current owner" and "former owner."  Rather, the expression "owner or operator of a facility," 10 V.S.A. § 6615(a)(1), has been interpreted to mean the *current* owner or operator of the facility as distinct from the "person who at the time of release . . . owned or operated any facility," id. § 6615(a)(2), the *former* owner. The current owner has complete joint and several liability based purely on that owner's status as the current owner.  Other potentially responsible parties, including former owners, have liability only in relation to releases of hazardous materials for which they are responsible.

[5] Daniels also argues that the State lacks evidence that he caused any specific releases. The court agrees this has not been proven.

because under either analysis the State has established that Daniels satisfies the test.

When the State took formal action against Daniels, he responded by creating a corporation that had no assets and transferred ownership of the site to the corporation. When the State sued Daniels, he claimed that the asset-free corporation, which could have no way of satisfying any liability or cleaning up the property, is the current owner.[6]

It is appropriate to pierce the corporate veil "to correct the use of the corporate form to evade legitimate claims." Agway v. Brooks, 173 Vt. 259, 264 (2001). "A standard test that has been applied in determining whether to pierce the corporate veil requires a court to consider: (1) whether a corporation was controlled by another to the extent it had independence in form only, and (2) whether the corporation was used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud." 1 Fletcher Cyc. Corp. § 41.30 (WL updated Apr. 2014); *see also* id. § 41.32 ("In cases of fraud, whether actual or constructive, the courts may regard the real parties responsible and grant relief against them or deny their claims and defenses based on the principles of equity. This is a principle older than the modern law of business corporations and does not depend on the regard or disregard of the corporation." (footnote omitted)).

The standard test is easily satisfied here. HSH has independence from Daniels personally in name only. There is no indication that it has any employees or shareholders. The only person associated with it other than Daniels is an employee of another of Daniels' corporations who is listed in corporate filings as its secretary. Daniels' decisions are its decisions. Daniels remains in control and possession of the site. Daniels clearly used HSH as an attempt to evade liability to the State as a current owner under 10 V.S.A. § 6615(a)(1). Daniels has not identified any purpose that HSH might have other than to shed Daniels' liability as a current owner. That is an

---

[6] As a defendant in this case, represented by the same counsel as Daniels, HSH has stood by silently as Daniels has essentially argued that it should be the one left holding the bag.

abuse of the corporate form.

As interpreted in the Howe Cleaners decision, a current owner has complete liability to the State regardless whether it caused the contamination. Former owners, who may be long gone by the time the State learns of the contamination, are responsible for their releases only. If a current owner could simply evade liability by transferring ownership of a contaminated site to an asset-free corporation of its own making, the purpose of 10 V.S.A. § 6615(a)(1) would be completely undermined. The statute obviously does not contemplate that.

Daniels, not HSH, is the current owner regardless of which time frame applies to that determination. 10 V.S.A. § 6615(a)(1). The court does not need to address the other issues related to liability in the State's motion. Daniels has raised no other defense to liability as a current owner. The State is entitled to summary judgment on Daniels' liability.

## C. Damages

The State seeks summary judgment on past damages, prejudgment interest, and injunctive relief and indicates that it will seek future damages at a later time. It does not seek penalties against Daniels. The damages sought relate to environmental assessments and plans, air sampling, and the installation and maintenance of ventilation systems.

Daniels argues that the affidavit in support of these damages is inadmissible, but the court disagrees for reasons set forth above. However, Daniels raises a valid point with respect to the summary exhibit submitted as the total proof to support the requested damages of over $400,000 (including interest). Daniels failed to follow Rule 56's procedure for opposing summary judgment on the basis of needing further discovery -- *see* V.R.C.P. 56(d)(nonmovant must show "by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition" and obtain time for discovery) -- and the court could therefore deem the issue waived. However,

10

given the high dollar amount at stake, the court will permit discovery on the issue of the amount of damages and then a hearing to permit Daniels to challenge the figures.

In addition, the Fournier settlement contributed funds against the total liability. It is not clear that the State's accounting of past damages includes that contribution.

Moreover, while the State is entitled to an injunction requiring Daniels to undertake such further "investigation, removal and remedial action" as is reasonable and necessary, it has not provided language for the injunction that is "specific in terms." V.R.C.P. 65(d).

Order

(1) The Town's motion to dismiss is granted.

(2) The Fourniers' motion to alter is granted. The court's May 16, 2014 entry denying their motion for default is vacated. That motion for default against Paul D. Gendron is granted.

(3) Daniels' motion for summary judgment is denied.

(4) The State's motion for summary judgment is granted. Daniels has current owner liability in this case under 10 V.S.A. § 6615(a)(1).

(5) Daniels shall have ninety days to do discovery with regard to damages. A one-day hearing will be scheduled after November 5 on the issue of the amount of past damages, prejudgment interest, the amount to be credited from the Fournier settlement, and the terms of injunctive relief. The court urges the parties to seek to stipulate to some or all of these issues.

Dated at Montpelier this 5th day of August, 2014.

_____
Helen M. Toor
Superior Court Judge