NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2411

_____

PRISCILLA GIUSEFFI,
                              Appellant
v.

SECRETARY UNITED STATES
DEPARTMENT OF HOMELAND SECURITY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cv-00622)
District Judge: Honorable Gerald J. Pappert

_____

Submitted Under Third Circuit L.A.R. 34.1
on January 31, 2020

Before: CHAGARES, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: April 23, 2020)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

BIBAS, *Circuit Judge*.

Retaliation claims require knowledge and action—in that order. One cannot retaliate without first knowing that the target engaged in protected activity. Priscilla Giuseffi claims that the federal government rescinded her job offer in retaliation for her complaint about her previous firing. But the record shows that Janice Barlow, the official responsible for making and rescinding that job offer, did not know about the prior complaint until after she decided to pull the offer. Without Barlow's prior knowledge of Giuseffi's complaint, Giuseffi cannot show that Barlow fired her because of the complaint. So there was no evidence of causation and the District Court properly granted summary judgment. We will thus affirm.

## I. BACKGROUND

### A. The rescinded job offer

On appeal from this summary judgment against Giuseffi, we view the facts in the light most favorable to her: Giuseffi used to work as a Disaster Reservist for the Chicago office of the Federal Emergency Management Agency (FEMA). In October 2010, FEMA fired her for refusing to accept two deployments. After losing her internal appeal, she filed a complaint with the Equal Employment Opportunity Commission (EEOC). She alleged that by firing her, FEMA had discriminated against her on account of her disability and retaliated against her for filing a prior complaint.

While that complaint was pending, she applied for a new job with FEMA's Philadelphia office. On her application and in her interviews, she did not disclose that she had been fired by FEMA's Chicago office. Nor did she tell anyone in the Philadelphia office that she had

2

filed a complaint with the EEOC after she was fired. So Janice Barlow, the Philadelphia FEMA official who recommended hiring her, did so under the impression that Giuseffi was still working in the Chicago office. Barlow also did not yet know that Giuseffi had filed a discrimination complaint. In November 2011, the Philadelphia office offered her the job.

Giuseffi then submitted a Form 306 to FEMA's central human-resources office in Virginia, not Philadelphia. On that form, Giuseffi disclosed, for the first time, that she had been fired and had filed a complaint with the EEOC. But nobody in Philadelphia was aware of it yet.

After accepting the offer, Giuseffi contacted Kenneth Ragozzino, a FEMA human-resources specialist who reported to Barlow in Philadelphia, to postpone her start date. As he had no indication otherwise, Ragozzino thought that Giuseffi still worked for FEMA and wondered if she could use her annual leave time to delay her start date. So he reached out to FEMA's central human-resources team in Virginia to see how much leave time she had accrued.

On December 29th, the Virginia office responded that Giuseffi no longer worked for FEMA and sent him her "termination packet." App. 96. The packet included her termination notice and her internal appeal to FEMA. But it did not mention her discrimination complaint to the EEOC.

Ragozzino immediately reported this information to Barlow. Until then, she too was unaware that Giuseffi was not an active FEMA employee. As soon as she found this out, Barlow decided to rescind Giuseffi's offer. Barlow considered her firing from the Chicago

3

office "significant"; she would not risk rehiring someone whom FEMA had just fired. App. 90. Still, at this point, Barlow still did not know that Giuseffi had filed an EEOC complaint.

In a classic example of bureaucratic delegation, Barlow told Ragozzino to have the Virginia office call Giuseffi and give her the bad news. So later that same day, at 12:40 p.m., Ragozzino emailed the Virginia office, asking how to "move forward expeditiously in rescinding the final offer" and whether that could be done "today." App. 125. Then, at 3:31 p.m., he confirmed that "[r]egional management [that is, Barlow] *does* want to move forward to rescind the offer" and would "prefer to do so today" by phone. App. 124 (emphasis in original).

At 3:46 p.m., Ragozzino heard back from Katie Short, a human-resources employee in the Virginia office, with some new information. She had found Giuseffi's Form 306 and told Ragozzino that Giuseffi had lodged "[a] formal complaint" with the EEOC challenging her firing. App. 221. Short heard nothing further from the Philadelphia office. Just before 3:57 p.m., she called and then emailed Giuseffi to rescind her job offer. Afterwards, Ragozzino emailed Barlow to confirm that the Virginia office had rescinded the offer.

Years later, in 2014, an EEOC administrative law judge ruled for Giuseffi, finding that the Chicago office *had* retaliated against her when it fired her in 2010.

### B. Procedural history

After Barlow rescinded the job offer, Giuseffi filed another EEOC complaint under Title VII. *See* 42 U.S.C. § 2000e–3(a) (prohibiting an employer from discriminating against an employee who "has made a charge"). She alleged that the Philadelphia office had rescinded her job offer in retaliation for her prior complaint against the Chicago office. A

4

different administrative law judge held a hearing and denied the complaint, finding no prima facie case of discrimination.

Giuseffi then filed suit in the District Court. The Court granted summary judgment for the Government and denied Giuseffi's motion to alter or amend the judgment.

Giuseffi now appeals both orders. We review the grant of summary judgment de novo. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019). And we review the denial of the motion to alter or amend the judgment for abuse of discretion, except that we review any questions of law de novo. *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001).

## II. GIUSEFFI CANNOT SHOW THAT HER PRIOR COMPLAINT CAUSED BARLOW TO RESCIND HER JOB OFFER

To defeat summary judgment, Giuseffi must show that she engaged in a protected activity, she later suffered an adverse employment action, and there was a causal link between the protected activity and the employer's action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231–32 (3d Cir. 2007). The Government contests only causation. So Giuseffi must show a genuine, material dispute about whether her prior wrongful-termination complaint (the protected activity) caused Barlow to rescind her job offer (the adverse action).

To do that, she must show one of four things: (1) a "temporal proximity" between the protected activity and adverse action that is "unusually suggestive of retaliatory motive," (2) a "pattern of antagonism" towards her after she filed her wrongful-termination complaint, (3) inconsistencies in the employer's explanations for the adverse action, or (4) other

5

evidence in the record as a whole from which a "reasonable factfinder" could otherwise infer causation. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259–60 (3d Cir. 2017) (internal quotation marks omitted).

Giuseffi cannot show causation under any theory. Her entire argument rests on suspicious temporal proximity. She shows no inconsistent explanations; Barlow, Ragozzino, and Short have consistently maintained that Barlow rescinded the offer because she had been fired, not because of any protected activity. Nor does she point to other evidence in the record as a whole. Giuseffi does imply that she is troubled by FEMA's repeated actions against her. But her case rises or falls on the timing of the decision to rescind her offer.

## A. The temporal proximity does not suggest causation

A plaintiff can defeat summary judgment on her retaliation claim by showing that "an employer's knowledge of [the] protected activity" was "very close" in time to the "adverse employment action." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). But the people "responsible for the adverse action" must know of the protected conduct "at the time they acted." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015).

Giuseffi argues that Ragozzino "unilaterally made the decision" to rescind the offer. Appellant's Br. 18. At most, she suggests, Barlow was just a "cat's paw" for the decision that Ragozzino actually made. Appellant's Br. 17–18 (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011)). If this were true, the timing might seem "unusually suggestive." *Carvalho-Grevious*, 851 F.3d at 260 (quoting *Shaner v. Synthes*, 204 F.3d 494, 505 (3d

Cir. 2000)). After all, Ragozzino learned of the EEOC complaint at 3:46 pm, just minutes before Short called Giuseffi to rescind the offer.

But the evidence in the record contradicts Giuseffi's understanding of the facts. Barlow, not Ragozzino, was the "deciding official." App. 88. Once Barlow learned that Giuseffi had been fired by the Chicago office, she told Ragozzino to have the Virginia office rescind Giuseffi's offer. So contrary to Giuseffi's understanding, Ragozzino and the Virginia office acted as mere agents to carry out Barlow's command.

Thus, when looking for temporal proximity, we must determine what *Barlow* knew "when [s]he made [the] decision" to rescind the offer. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 801 (3d Cir. 2003) (per curiam). When Barlow made the decision, she did not know that Giuseffi had filed a complaint with the EEOC. In fact, Giuseffi conceded at her deposition that she had no proof that Barlow knew at that time. And while Barlow could have read Giuseffi's Form 306 before deciding to rescind the offer, nothing in the record suggests that she had. The form was in the Virginia office, not in Philadelphia, and Giuseffi does not show that Barlow could access that office's files on her own. Finally, even if she did consult Ragozzino when making her decision, Ragozzino could not have told her about the EEOC complaint because he did not learn about it until *after* Barlow made her decision.

To be sure, when Barlow decided to rescind the offer, she knew that the Chicago office had fired Giuseffi. This is why she made that choice. But the protected activity was Giuseffi's filing of the *EEOC complaint*, not her firing by the Chicago office. Even after we draw all reasonable inferences in her favor, the timeline reveals no causal link.

7

## B. There is no pattern of antagonism

Even when the adverse action is not suspiciously close in time to the protected activity, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to [an] inference" of causation. *Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 895 (3d Cir. 1993)). But the facts here fall well short of the bar that we have set for a pattern of antagonism.

For example, in *Woodson v. Scott Paper Co.*, the plaintiff had direct evidence that (1) an influential human-resources director knew of his EEOC claims, (2) the director had suggested that he drop those claims, (3) the director designed and took part in the ranking process that led to the plaintiff's firing, (4) two of the plaintiff's three evaluators also knew of his EEOC claims, and (5) two of the three evaluators did not review his personnel file before giving him a poor rating that led to his firing, suggesting that the ranking was a sham. 109 F.3d 913, 921–23 (3d Cir. 1997). Even with this troubling pattern, we considered this a "very close" case. *Id.* at 924.

In contrast, Giuseffi does not provide any comparable evidence of a pattern of antagonism. From her perspective, it may seem that FEMA has a habit of treating her badly. Indeed, an administrative law judge later found that the Chicago office had retaliated against her. But she cannot show that the decisionmakers here acted antagonistically towards her. She points to no evidence showing that any employee in the Philadelphia office knew about her prior EEOC complaint before Barlow decided to rescind her job offer. And

unlike the plaintiff in *Woodson*, Giuseffi offers no evidence that Ragozzino or Short somehow engineered that outcome, or even that they knew of her prior EEOC complaint before Barlow decided to pull the offer. So even reading the record in Giuseffi's favor, she cannot defeat summary judgment.

### III. GIUSEFFI FORFEITED HER REQUEST TO ALTER OR AMEND THE DISTRICT COURT'S JUDGMENT

Giuseffi also challenges the District Court's order denying her motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). But in her briefs, she mentions this issue only in passing. So she forfeited it. *See, e.g.*, *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018). Regardless, the District Court did not abuse its discretion in denying this motion, which merely rehashed the factual arguments that Giuseffi made when opposing summary judgment. That is "not a proper basis" for a Rule 59(e) motion. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam).

\* \* \* \* \*

When an employer retaliates, knowledge always precedes action. To survive summary judgment, a plaintiff must present evidence at least suggesting that the decisionmaker knew of the protected activity *before* taking the adverse action. But as the record shows, Barlow did not know of the EEOC complaint when she decided to pull the plug on Giuseffi's offer. No prior knowledge means no causation. And without causation, Giuseffi cannot show retaliation. So the District Court correctly granted summary judgment against Giuseffi. We will affirm.

9