**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2546
_____

JONATHAN FELLUS, MD,
                                        Appellant

v.

SELECT MEDICAL HOLDINGS CORP; COLUMBIA CASUALTY COMPANY;
ESIS PROCLAIM; CNA HEALTHPRO CLAIMS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-17-cv-04489)
District Court Judge: Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 26, 2020

_____

BEFORE: JORDAN, RESTREPO and FUENTES, *Circuit Judges*

(Filed: August 19, 2020)

_____

OPINION[*]
_____

RESTREPO, *Circuit Judge.*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Dr. Jonathan Fellus (Fellus) appeals the denial of his motion for summary judgment and the grant of Select Medical Holdings Corporation (Select) and Columbia Casualty Company's (Columbia) cross-motions for summary judgment. The District Court correctly determined that Fellus' conduct of having a sexual affair with his patient fell outside the scope of his employment, and he was therefore not insured by his employer's malpractice insurance policy. Because we agree that Select and Columbia were not obligated to provide Fellus with a defense or indemnification from a suit arising from his misconduct, we will affirm the judgment of the District Court.

I

We write for the parties, and in so doing communicate only those facts necessary for the disposition of this matter. Fellus was a neurologist employed by the Kessler Institute for Rehabilitation, Inc. (Kessler), a wholly owned subsidiary of Select. Fellus and Kessler were insured through a policy that Columbia issued to Select, which provided coverage for claims against Kessler employees arising from "acts within the scope of their employment." App. 0338. Under the terms of the policy, Select was responsible for the first $2 million of an insured's costs, with Columbia covering costs exceeding that amount up to $10 million. The Columbia policy dictates Select's liability; the policy states that the same terms and conditions determine both Columbia and Select's duty to defend or indemnify a Kessler employee. Fellus contends the terms of the policy entitle him to reimbursement for the costs and fees incurred as a result of the suit brought by his former patient, Ms. Lorette Schroth (Schroth).

In August 2008, Fellus treated Schroth for a head injury sustained during a car accident. After Schroth's initial medical examination, she wrote Fellus that she would not mind if he asked her out on a date. Fellus and Schroth began a sexual affair, consisting of rendezvous in his examination room, his home, and a hotel. When Schroth ultimately became pregnant, Fellus provided funds for her abortion and then ended their relationship. Schroth exhibited suicidal tendencies and was admitted to a clinic for treatment. Upon her discharge, Schroth was instructed to follow up with her neurologist and returned to see Fellus. During this final visit, Fellus requested and received oral sex from Schroth in his exam room.

In September 2010, Schroth filed suit against Fellus in New Jersey state court, alleging that Fellus had engaged in an inappropriate sexual relationship in violation of the Board of Medical Examiners' general rules of practice, NJAC 13:35-6.3, inflicted intentional emotional distress, caused negligent emotional distress, and committed medical malpractice.[1] The matter proceeded to trial, after which a jury awarded Ms. Schroth $1.5 million in compensatory damages and $1.7 million in punitive damages, as well as prejudgment interest of $360,328.77, resulting in a total of $3,560,328.77. The Superior Court of New Jersey, Appellate Division, affirmed the compensatory damages but remanded the punitive damages to determine their reasonableness. The trial court ultimately amended the punitive damages to 1 million dollars.

---

[1] Schroth's claims against Kessler were dismissed prior to trial. The medical malpractice claim against Fellus was dismissed "on the motion of the plaintiff" at the start of trial, on April 15, 2015.

Fellus filed a declaratory judgment complaint claiming that Select and Columbia had a duty to defend and indemnify him in the Schroth litigation and must reimburse him for the costs. Select and Columbia removed the action to the District Court for the District of New Jersey, and the parties subsequently filed cross motions for summary judgment. The District Court granted Select and Columbia's motion and denied Fellus' motion. Fellus now appeals.

II

The District Court had jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1), and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. "We review the grant or denial of summary judgment de novo." *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party opposing a motion for summary judgment "must set forth specific facts such that a reasonable jury could find in the non-moving party's favor, thereby establishing a genuine issue of fact for trial." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). "On cross-motions for summary judgment, the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation marks omitted).

III

Fellus contends that Select and Columbia were obligated to defend or indemnify him in the Schroth litigation and he is therefore owed reimbursement for all costs

4

resulting from that action. In deciding this claim, we turn to the plain language of the policy, which the parties agree is construed under New Jersey law. *See Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001) ("[T]he words of an insurance policy are to be given their plain, ordinary meaning.").

Fellus' argument that he qualifies as an insured under the terms of the Columbia policy is unavailing. The plain language of the policy states that employees are insured "only for acts within the scope of their employment by [Select]." App. 0338. If a Kessler employee is deemed insured, the policy covers professional liability claims "arising out of the rendering of 'professional services,'" defined as services "to care for or assist [Kessler] patients." App. 0352, 0407. Thus, under the policy's plain language, Columbia and Select would be obligated to indemnify Fellus only if his sexual relationship fell within the scope of his employment. Even if such a finding were possible, Fellus would be entitled to claim coverage only if his affair constituted a professional service. Interpreting the policy to allow for coverage would defy both governing law and common sense.

Under New Jersey law, an employee's action is considered to be within the scope of his or her employment if "(a) it is of the kind [they] are employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the [employer], and (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer]."[2]

---

[2] The fourth prong is not at issue here because Schroth did not allege that force was intentionally used.

Restatement (Second) of Agency § 228 (1958); *Carter v. Reynolds*, 815 A.2d 460, 465 (N.J. 2003) (holding that the scope of employment is analyzed under the Restatement).

First, Fellus' actions with Schroth were not of the kind he was employed to perform. According to his employment contract with Kessler, he was to commit his "entire professional time . . . to the affairs of the Institute in the practice of the profession of medicine." App. 0316. Fellus does not assert that Kessler considered his engaging in sexual relations with his patient related to his employment. Indeed, such an assertion would have been specious. The Code of Conduct of the Board of Medical Examiners forbids such behavior, stating that "[i]t is beyond dispute that sexual contact with patient [sic] is in conflict of the very essence of the practice of medicine. . . . It is well established that sexual activity between physicians and patients is almost always harmful to the patient *and is prohibited*." App. 1249 (emphasis added). Fellus himself admitted his relationship was outside the bounds of a doctor-patient relationship and "totally inappropriate." App. 0869, 0880. It is beyond question that his employer would have agreed. *See Davis v. Devereux Found*., 37 A.3d 469, 492 (N.J. 2012) (finding an employee's actions outside the scope of employment because there "is no suggestion that in its hiring, training and supervision" the employer "ever tolerated, let alone encouraged," the act which the employee was accused of committing).

Second, Fellus' sexual relations with Schroth did not occur substantially within the time or space limits authorized by his employment with Kessler. Damages were awarded for Fellus' conduct over the course of their romantic relationship, not for his treatment of

6

her as his patient. In fact, much of the actionable relationship occurred outside of his examination room, in locations such as his home and a hotel.

Third, Dr. Fellus admitted this was a "romantic" relationship with "elements of sex." App. 0869. His actions were in no way in service to his employer and for this reason alone exceeded the scope of his employment. *See, e.g., Andrews v. United States*, 732 F.2d 366, 370 (4th Cir. 1984) (holding a physician's assistant's seduction of a patient was in the physician's assistant's own interest, not in the interest of his employer).

Fellus contends that his sexual relationship with Schroth was within the scope of his employment because, "but for" his employment, their relationship would have been permissible. Fellus knowingly engaged in an impermissible sexual relationship, flagrantly disavowing his profession's code of conduct. Blaming his employer for rendering his audacious conduct impermissible is unpersuasive at best. Under his rationale, any interaction between doctor and patient, not matter how abusive or predatory, would be deemed within the scope of employment and covered by Columbia's policy. The District Court was correct in determining Fellus was not acting as a doctor when he engaged in sexual relations with his patient.[3]

IV

Because Fellus' actions occurred outside of the scope of his employment, he is not insured by the policy, and is therefore not entitled to defense or indemnification for either

---

[3] Because Fellus conduct exceeded the scope of his employment, there is no need to evaluate whether his affair constituted a "professional liability claim," although a plain reading of the policy establishes that Fellus sexual relationship did not constitute a professional service conducted on behalf of his employer.

the compensatory or punitive damages. The District Court's order granting Select and

Columbia's motion for summary judgment will be affirmed.