**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2605
_____

KENNETH MOSES,
Appellant

v.

UNITED STATES STEEL CORPORATION
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-20-cv-00752)
District Judge: William S. Stickman, IV
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 19, 2024

Before:  RESTREPO, McKEE, and SMITH *Circuit Judges*

(Opinion filed: January 10, 2025)

_____

OPINION[*]
_____

McKEE, *Circuit Judge*.

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Kenneth Moses appeals the District Court's grant of United States Steel Corporation's ("USS") motion for summary judgment[1] on his claims of discrimination in violation of 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act.[2] For the reasons that follow, we will affirm.

## I.

We analyze these claims under the *McDonnell Douglas* burden-shifting framework.[3] Under this framework, Moses must first demonstrate "a prima facie case of racial discrimination."[4] "[T]he burden then must shift to [USS] to articulate some legitimate, nondiscriminatory reason for [Moses' termination]."[5] If USS articulates a legitimate nondiscriminatory reason, then Moses must prove that USS's legitimate reason is pretext for actual discrimination.[6]

---

[1] We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of summary judgment de novo. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019). Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[2] The analysis of disparate treatment claims under § 1981 and the PHRA is essentially the same. *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009) (recognizing "that the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII"); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016) (recognizing that claims brought under Title VII and the PHRA "are governed by essentially the same legal standards").

[3] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973).

[4] *Id.* at 802. To establish a prima facie case, a plaintiff must prove that "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

[5] *McDonnell Douglas*, 411 U.S. at 802.

[6] *Id.* at 804.

The District Court determined that: (1) Moses established a prima facie case; (2) USS articulated a legitimate non-discriminatory reason for Moses' termination; and (3) Moses had not proven that this reason was pretext. On appeal, Moses challenges the District Court's conclusion that he failed to demonstrate pretext.

To establish pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[7] Moses contends that he presented sufficient evidence from which a reasonable factfinder could disbelieve USS's proffered explanation for his termination. He also attempts to invoke the "cat's paw" theory to claim that his supervisors' discriminatory animus was the proximate cause of his termination. Moses fails to establish pretext under either theory.[8]

**A.**

To discredit an employer's articulated legitimate reason for termination,

> the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions

---

[7] *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The second prong is not relevant as Moses does not assert that he established pretext under it.

[8] Moses and amici curiae also argue that the District Court improperly held Moses to a heightened pretext plus standard. Because Moses has failed to establish pretext, we need not address this argument.

that a reasonable factfinder *could* rationally find them "unworthy of credence."[9]

We are not here to decide "whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]."[10] Accordingly, the plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."[11]

USS terminated Moses' employment because he derailed a train while on a Last Chance Agreement.[12] There is no inconsistency in USS's decision such that a factfinder could reasonably disbelieve USS's articulated legitimate reason for Moses' dismissal. Although Moses contends that USS wrongly decided to terminate him,[13] he fails to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in USS's decision to terminate him for derailing a train "that a reasonable factfinder *could* rationally find them 'unworthy of credence.'"[14]

**B.**

---

[9] *Fuentes*, 32 F.3d at 765 (citations omitted) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

[10] *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (alteration in original) (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).

[11] *Id.*

[12] Pursuant to the Last Chance Agreement, USS gave Moses a "final opportunity . . . to become and remain a satisfactory employee." Appx 473.

[13] Moses claims that USS erroneously blamed him for the train derailment even though (1) he was standing in the correct spot when the train derailed; (2) he followed the safety protocols; (3) the rail tracks were not properly marked with flags; and (4) trouble with the equipment lead to the train derailment.

[14] *Fuentes*, 32 F.3d at 765 (quoting *Ezold*, 983 F.2d at 531).

4

Under cat's paw theory, an employer may be held liable if "one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision."[15] Thus, to prevail under cat's paw theory, Moses must prove that his supervisors' discriminatory animus was the proximate cause of his termination.[16] "Proximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'link[s] that [are] too remote, purely contingent, or indirect.'"[17]

Moses contends that his supervisors, Amel Brown and Robert Williams, harbored racial animus towards him, which led them to report safety violations. He contends that these safety violations proximately caused his termination because they led to disciplinary infractions that justified USS's issuance of a Last Chance Agreement, and but for his placement on a Last Chance Agreement, he would not have been fired for the train derailment. There is no evidence, however, that Brown's and Williams' reports of safety violations proximately caused his termination for derailing a train. Moses was placed on a Last Chance Agreement after facing *five* disciplinary actions and was terminated after receiving his sixth disciplinary action. Only four of these six disciplinary actions stemmed from safety violations that were reported by Brown and Williams. Moreover, while Brown and Williams had the ability to report the four safety violations they observed, they had no authority to issue discipline. At USS, "[l]abor relations [wa]s

---

[15] *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011).

[16] *McKenna v. City of Philadelphia*, 649 F.3d 171, 177–80 (3d Cir. 2011).

[17] *Staub*, 562 U.S. at 419 (alteration in original) (quoting *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010)).

the only department that issue[d] discipline slips."[18] The labor relations department decided "if discipline [wa]s warranted . . . [b]ased on the infraction and whether or not someone had violated a rule or procedure."[19] The connection between Moses' firing and his supervisors' reports of safety violations is too attenuated to establish that they proximately caused his termination. Moses fails to establish pretext under the cat's paw theory because he does not demonstrate that Brown and Williams "intended to cause, and did in fact cause" his termination.[20]

## II.

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment in favor of USS.

---

[18] Appx 712.
[19] Appx 785.
[20] *Staub*, 562 U.S. at 421.